John SCOTT-PAINE, as owner of the experimental PT BOAT PV-73, Libelant-Appellant,

v.

MOTORTANKER V. L. KEEGAN II, her engines, etc., and TANK BARGE HY-GRADE, INC., Claimant-Respondent-Appellee.

No. 88, Docket 29014.

United States Court of Appeals Second Circuit.

Argued Sept. 30, 1964.

Decided Dec. 8, 1964.

---

Richard G. Ashworth, New York City (Haight, Gardner, Poor & Havens, and Raymond P. Hayden, New York City, of counsel, on the brief), for libelant-appellant.

Thomas J. Irving, New York City (Foley & Martin, New York City, on the brief), for claimant-respondent-appellee.

Before LUMBARD, Chief Judge, FRIENDLY and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge:

Suit was commenced on the admiralty side of the District Court for the Southern District of New York to recover for the damage to libelant's experimental PT boat, PV–73, allegedly caused by respondent's negligent operation of its motortanker Keegan. The District Judge, sitting as trier of fact, concluded that "under all the evidence in the case, libelant has failed to prove any negligence on the part of the Keegan causing ice damage to PV–73" and dismissed the libel. We affirm.

The PV–73, out of operation since 1953, had been moored at the same dock in Greenwich (Connecticut) Harbor since 1955. On January 11, 1959 the Keegan was bound into this harbor with a cargo of oil to be discharged at the Fairfield Home Oil Company Dock, which was some 700 feet beyond the dock where the PV–73 lay moored. The ice was solid to some point shortly before the Fairfield Dock, and in the area where the PV–73 was moored there were ice floes about two inches thick. The Keegan navigated up the channel until her stern was approximately 100 feet beyond the stern of the PV–73, and then she increased her speed in order to break up

the solid ice in front of the Fairfield Dock. After doing that she backed down again to just above where the PV–73 was moored and she then turned in a counterclockwise direction in order to back into the Fairfield Dock. Two days later the PV–73 was reported sinking and, after she had been raised, three fresh holes were found at her waterline.

 Libelant sought relief on the theory that ice was forced against the side of the PV–73 when the Keegan passed and made the counterclockwise turn, that this caused the sinking of the PV–73, and that the Keegan had been negligently operated and maneuvered. Regardless of whether libelant's evidence tended to show that the Keegan caused the damage, libelant failed in establishing any negligence. The District Judge, specifically found that it was usual and customary for vessels to proceed in the channel to the Fairfield Dock as the Keegan had done, that the Keegan navigated in the center of the channel at a relatively slow speed ranging between 3 and 5 miles per hour, that at no time did any part of the Keegan come closer than 30 feet to the PV–73, and that the maneuver of turning around was a safety measure undertaken to ease the handling of the vessel on leaving the harbor and that it was a usual and customary maneuver. None of these findings of fact are clearly erroneous and on the basis of these findings the District Judge was entitled to conclude that libelant failed to prove any negligence in the operation of the Keegan.

██ Libelant challenges this conclusion and the findings of fact upon which it rests, but we are not persuaded. The testimony of Charles Borchetta, which was eventually stricken on the ground that the libelant had spoken to him before the trial and yet failed to name him as a witness in the pretrial order or in the pretrial memorandum, in no way tended to show that the Keegan had been operated negligently; hence we need not consider whether the judge erred in striking the testimony. And even if the testimony of the respondent's witnesses was discounted by the inference arising from respondent's failure to call the Keegan's alleged lookout as a witness, the findings of the District Judge would not be rendered clearly erroneous as there was ample evidence to support the findings. Libelant's final argument is that even if *arguendo* the Keegan had proceeded in the middle of the channel and at least 30 feet from the PV–73 this was not sufficient: the Keegan was under an obligation to navigate further to the west, out of the channel, in order to pass the PV–73 at a greater distance. Yet libelant fails to realize that this imputed obligation can be no greater than the obligation to use due care, for that is the limit of respondent's legal obligation to the libelant; and therefore if it is found that the Keegan exercised due care in proceeding as it did, liability cannot be imposed for failure to proceed further to the west and out of the channel. Of course, the mere fact that the Keegan had proceeded "in the usual and customary manner" of tankers proceeding to the Fairfield Dock does not necessarily mean that the Keegan had proceeded with due care, The Majestic, 48 F. 730, 732 (2 Cir. 1891). However, this fact, especially since the PV–73 lay moored in the same position at the same dock for four years prior to the accident, is highly relevant, for "[i]ndeed in most cases reasonable prudence is in fact common prudence," The T. J. Hooper, 60 F.2d 737, 740 (2 Cir. 1932). Moreover, there was testimony by the Keegan's captain that there were yachts anchored on the westerly side of the harbor and also that navigating out of the channel would expose the Keegan to the risk of running up against unknown sunken objects and other obstacles; the District Judge was entitled to believe this testimony and conclude that the Keegan fulfilled its obligation to use due care by navigating in the center of the channel.

We therefore affirm.